SENTIENT LAW GROUP, P.C.
352 Middlesex Avenue
Colonia, NJ 07067
P: (201) 994-9070
F: (212) 390-1276
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SMP PROPERTIES LLC, | : | |
| | : | |
| Plaintiff, | : | Civ. No. |
| | : | |
| v. | : | |
| | : | **COMPLAINT WITH DEMAND** |
| ENCORE REALTY LLC, | : | **FOR A JURY TRIAL** |
| ANKUR PATEL and RAHUL PATEL | : | |
| | : | |
| Defendants. | : | |
| | : | |

As and for its Complaint against defendants Defendant Encore Realty, LLC ("Encore"), Defendant Ankur Patel ("Ankur") and Defendant Rahul Patel ("Patel"), plaintiff SMP Properties, LLC ("SMP") alleges as follows:

## I. INTRODUCTION

1. Plaintiffs and Defendant Ankur were long-time friends and had many business-dealings together. Defendant Ankur improperly used this friendship and past history to coerce and induce Plaintiff to loan Defendants money that Defendants never intended to repay.

2. Defendant Ankur's fraud and theft did not occur without the help of others. Rather, Defendant Ankur enlisted the aid of Defendant Patel and Defendant Encore to facilitate and conceal his pattern of theft and fraud. This coalition of firms and individuals became part of the "Encore Criminal Enterprise," a RICO enterprise.

## II.  JURISDICTION AND VENUE

3.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, and 18 U.S.C. § 1964(c) because this action alleges violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

4.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State-law causes of action arise from the same set of operative facts.

5.  Venue is proper in this District under 28 U.S.C. § 1391 (a)–(d) because, inter alia, substantial parts of the events or omissions giving rise to the claim occurred in the District and/or a substantial part of property that is the subject of the action is situated in the District.

## III.  PARTIES

6.  Plaintiff SMP is a limited liability company duly organized and existing under the laws of the State of New Jersey with its principal place of business at 2100 Oak Tree Road, Suite 2, Edison, NJ 08820.

7.  Defendant Encore is a limited liability company duly organized and existing under the laws of the State of New Jersey with its principal place of business at 18 Tally Road, Hamilton, NJ 08619.

8.  Defendant Ankur is an owner, officer and employee of Defendant Encore and conducts business from 18 Tally Road, Hamilton, NJ 08619.

9.  Defendant Rahul is an owner, officer and affiliate of Defendant Encore and conducts business from 117 Grouse Hill Road, Glastonbury, CT 06033.

10.  Upon information and belief, Defendant Rahul is Defendant Ankur's cousin and is associated with Defendant Encore through prior business dealings.

## IV.  FACTS RELEVANT TO ALL CLAIMS

11. Plaintiff SMP is a real estate investment fund comprised of twenty-four members. SMP acquires, rehabilitates and sells primarily residential properties throughout New Jersey.

12. Defendant Encore is a real estate investment vehicle, owned by Defendant Ankur, that developed a relationship with SMP through certain business dealings that involved the purchase and sale of real estate.

13. A managing member of SMP was Defendant Ankur's Certified Public Accountant from 2016 through 2018.

14. Another managing member considered Defendant Ankur a friend, with their relationship going back to as early as 2008.

15. In October 2018, Defendant Ankur asked SMP to loan $200,000 to Defendant Encore for the purchase of a property ("Principal") located at 202-204 Washington Street, New Briton, CT 06051 (the "Property").

16. Defendant Ankur offered SMP $40,000 as consideration for loaning the Principal ("Cost"). The Principal and Cost are collectively referred to herein as the "Loan".

17.  Defendant Ankur reassured that the Loan would be repaid to SMP in six monthly increments of $40,000, beginning November 2018 with a final installment due April 2019.

18.  To further induce SMP to make the Loan, Defendant Ankur told SMP he would personally guarantee the Loan.

19. Because SMP had previously conducted business transactions with Defendant Encore and Defendant Ankur and was further induced by Defendant Ankur's assurances and personal

guaranty, SMP agreed to move forward with the Loan, reasonably believing that the Loan would generate returns on SMP's capital.

20. Without prior notice, on October 9, 2018, Defendant Ankur told SMP to wire the Principal directly to a bank account owned by Defendant Patel, instead of wiring the funds to Defendant Encore's bank account.

21. Defendant Ankur explained that Defendant Patel was his cousin and that the Principal needed to be in Defendant Patel's possession that same day to close on the Property, otherwise the deal would be lost.

22. At Defendant Ankur's insistence, SMP wired the Principal to the account information provided by Defendant Ankur.

23. Thereafter, in December 2018, Defendant Ankur deposited two checks into SMP's bank account, in the amount of $40,000 each.

24. The checks were endorsed by Defendant Patel and were supposed to be the Loan repayment installments for November 2018 and December 2018. A true and correct copy of checks are attached hereto as **Exhibit 1.**

25.  Both checks were returned due to insufficient funds and SMP incurred penalties in connection with same.

26. SMP immediately reached out to Defendant Ankur and told him Defendant Encore needed to resolve these defaults or SMP would be forced to bring a legal action against him and his criminal enterprise.

27. Defendant Ankur first feigned surprise, then falsely promised SMP he was trying to "work it out" with the other Defendants and the rest of his family.

28.  After weeks of charades and false pretenses, Defendant Ankur apologized to SMP for stealing their money. Thereafter, Defendant Ankur ceased all communication with SMP and its managing members.

29. As such, in May 2019, SMP, through counsel, demanded Defendant Ankur and Defendant Patel return the money they took from SMP. Neither Defendant Encore, Defendant Ankur nor Defendant Patel responded to the demand.

30. Frustrated and aware that Defendant Encore, Defendant Ankur and Defendant Patel had employed deceit to steal SMP's money, SMP filed a police report with the Middlesex County Police Department in September 2019.

31. In December 2019, a detective from the Edison Police Department called SMP to talk about the police report. After SMP explained the whole fraud to the detective, a bench warrant was issued for Defendant Ankur.

32. SMP is the victim of the Encore Criminal Enterprise's fraud and theft.

33. SMP has never received any of the Principal it loaned to Defendant Encore, Defendant Ankur and Defendant Patel.

34. SMP sustained and continues to sustain damages because of the Defendant's theft and fraud.

## V.  CAUSES OF ACTION

### FIRST COUNT
### VIOLATION OF 18 U.S.C. § 1962(C)
### (PLAINTIFF VERSUS THE ENCORE CRIMINAL ENTERPRISE)

35. Plaintiffs incorporate by reference all preceding paragraphs, as if fully set forth herein.

36. Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

37. The Encore Criminal Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of Defendants, including their employees and agents and other unnamed co-conspirators as set forth *supra*. The Encore Criminal Enterprise is an ongoing organization that functions as a continuing unit. The Encore Criminal Enterprise was created and used as a tool to effectuate Defendants' pattern of racketeering activity. The Defendant "persons" are distinct from the Defendant Encore Criminal Enterprise.

38. The Encore Criminal Enterprise falls within the meaning of 18 U.S.C. § 1961(4) and consists of a group of "persons" associated together for the common purpose of: (i) extorting, misleading, and stealing from Defendant Ankur's victims; and (ii) providing false documentation to delay the reporting of his criminal activity.

39. Defendants have conducted and participated in the affairs of the Encore Criminal Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5). The pattern of racketeering activity also included multiple instances of mail and wire fraud as described below.

40. The Encore Criminal Enterprise engaged in and affected interstate commerce, because, *inter alia*, Defendant Encore, Defendant Ankur and Defendant Patel contracted with banks, corporations and citizens of different states to transfer money across state lines and deposit "bad checks" in furtherance of Defendant Ankur's fraud.

41. Defendants exerted control over the Encore Criminal Enterprise, and Defendants participated in the operation or management of the affairs of the Encore Criminal Enterprise.

42. Within the Encore Criminal Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The Encore Criminal Enterprise

used this common communication network for the purpose of enabling Defendant Ankur's criminal activities.

43. Each participant in the Encore Criminal Enterprise had a systematic linkage to each other participant through corporate ties, familial relationships, financial ties, and the continuing coordination of their activities. Through the Encore Criminal Enterprise, the Defendants, as co-conspirators, functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes.

44. The Encore Criminal Enterprise used the mail and wires for the transmission, delivery, or shipment of the following that were foreseeably caused to be sent as a result of Defendants' illegal scheme:

    a) Wires of money among the Defendants;

    b) Emails between the Defendants on the subject of Defendant Ankur's criminal activities;

    c) Use of emails and text messages by the Defendants to construct false narratives to deceive SMP;

    d) Deposits of "bad" checks in an effort to delay the revelation of theft of the money.

45. The Defendants utilized the interstate and mail and wires for the purpose of obtaining money or property by means of the omissions, false pretenses, and misrepresentations described therein.

46. The Defendants also used the Internet and other electronic facilities to carry out the scheme and conceal the ongoing fraudulent activities.

47. The Defendants also communicated by U.S. Mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, and other third-party entities in furtherance of the scheme.

48. The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct to deceive Plaintiff about the activities of the Encore Criminal Enterprise.

49. To achieve their common goals, the Defendants hid from the Plaintiffs the unlawfulness of Defendant Ankur's conduct and the Defendants suppressed and/or ignored warnings from third parties about his conduct.

50. Defendants' scheme and the above described racketeering activities amounted to a common course of conduct which was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiffs. Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to Plaintiffs' property.

51. Defendant Encore is separate and distinct from the pattern of racketeering activity alleged herein. Defendants engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the Encore Criminal Enterprise.

52. Plaintiff has been injured in their property and business by reason of these violations. Defendants interfered with Plaintiffs' current and prospective contractual relations and fiduciary relationships because Plaintiff lost opportunities to otherwise make returns for its members, as a result of Defendant Ankur's conduct.

53. Had members of the Encore Criminal Enterprise not been complicit in Defendant Ankur's predatory behavior and fraud, Plaintiff would not have been injured. Thus, Plaintiffs' injuries

were directly and proximately caused by Defendants' racketeering activity, as described above.

54. By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## SECOND COUNT
## VIOLATION OF 18 U.S.C. § 1962(D)
## BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(C)
## (PLAINTIFF VERSUS THE DEFENDANT ENCORE CRIMINAL ENTERPRISE)

55. Plaintiff incorporate by reference all preceding paragraphs as if fully set forth herein.

56. Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section.

57. Defendants have violated section 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the section 1962(c) Enterprise described previously through a pattern of racketeering activity.

58. As demonstrated in detail above, the Defendants, as co-conspirators, have engaged in numerous overt and fraudulent racketeering acts in furtherance of the conspiracy, including multiple instances of mail and wire fraud in violation of  18 U.S.C. § 1341 and 18 U.S. Code § 1343.

59. The nature of the above-described Defendants' co-conspirators' acts in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c) but also were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity. At all relevant times, all Defendant and all Defendants' co-conspirators

were aware of the essential nature and scope of the Encore Criminal Enterprise and intended to participate in it.

60. As a direct and proximate result of Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), Plaintiff has been and are continuing to be injured in their business and property, as set forth more fully above.

**THIRD COUNT**
**VIOLATION OF 18 N.J.S.A 2C:41-2(a)**
**(PLAINTIFF VERSUS THE DEFENDANT ENCORE CRIMINAL ENTERPRISE)**

61. Plaintiff re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth at length herein.

62. The New Jersey Racketeer Influenced and Corrupt Organizations Act (" NJ RICO") provides, at N.J.S.A. 2C:41-2(a) that "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which he has participated as a principal within the meaning of N.J.S. 2C:2-6 to use or invest directly or indirectly, any part of the income, or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the activities of which affect trade or commerce."

63. NJ RICO also provides that "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in or activities of which affect trade or commerce." N.J.S.A. 2C:41-2(b).

64. NJ RICO further provides that "It shall be unlawful for any person employed by or associated with any enterprise engaged in activities which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern

of racketeering activity or collection of unlawful debt." N.J.S.A. 2C:41-2(c).

65. NJ RICO also provides that "It shall be unlawful for any person to conspire as defined by N.J.S.A 2C:5-2, to violate any of the provisions of this section." N.J.S.A. 2C:41-2(d).

66. Defendants, individually and jointly, as part of the enterprise agreed to commit more than two racketeering incidents, with knowledge that the objective was unlawful and intended to further that unlawful objective.

67. Plaintiff and those similarly situated have suffered harm from Defendants' violations of RICO.

68. Plaintiff and all others similarly situated are thus entitled to all appropriate legal and equitable relief, an award of treble their damages, plus attorney's fees, and costs pursuant to N.J.S.A. 2C:41-4(c).

### FOURTH COUNT
### CONVERSION

69. Plaintiff re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth at length herein.

70. As owners, employees and affiliates of Defendant Encore, Defendant Ankur and Defendant shared access to the Principal which was wired to an account belonging to Defendant Patel.

71. Defendant Encore, Defendant Ankur and Defendant Patel failed to return SMP's money and without SMP's consent, authorization or knowledge, wrongfully used and retained SMP's money for their own use and purposes.

72. Defendant Ankur and Defendant Patel, individually, jointly, and in concert with Defendant Encore wrongfully converted SMP's property for their own unauthorized use and purposes, and to further the prospective economic advantage of Defendant Encore and themselves.

73. The Defendant's actions constitute a conversion of SMP's property.

74. As a direct and proximate result of this conduct, SMP has suffered and will continue to suffer significant and substantial damages.

75. Thus, Plaintiff demands judgment against Defendant Encore, Defendant Ankur and Defendant Patel for the following compensatory damages plus interest through the date of judgment, consequential damages, punitive damages as authorized by N.J.S.A 2A-15-5, interest, attorney's fees, costs of suit and expenses, and, such other relief as the Court deems just and equitable.

## COUNT FOUR
## CIVIL CONSPIRACY

76. Plaintiff re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth at length herein.

77. By working in concert to conduct the above described actions, including unlawfully appropriating and misusing SMP's money, Defendant Ankur and Defendant Patel, individually, jointly, and in concert with Defendant Encore have interfered with SMP's prospective economic advantage and existing business relations with its members without justification.

78. As a direct and proximate result of this conduct, SMP has suffered and continues to suffer significant and substantial damages.

79. Thus, Plaintiff demands judgment against Defendant Encore, Defendant Ankur and Defendant Patel for the following compensatory damages plus interest through the date of judgment, consequential damages, punitive damages as authorized by N.J.S.A 2A-15-5, interest, attorney's fees, costs of suit and expenses, and, such other relief as the Court deems just and equitable.

**FIFTH COUNT**
**UNJUST ENRICHMENT**

80. Plaintiff re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth at length herein.

81. At all material times relevant hereto and without limitation, by engaging in the unlawful and improper conduct described herein, Defendant Encore, Defendant Patel and Defendant Ankur have been unjustly enriched to the detriment of SMP.

82. As a direct and proximate result of this conduct, SMP has suffered and will suffer significant and substantial damages.

83. Thus, Plaintiff demands judgment against Defendant Encore, Defendant Ankur and Defendant Patel for the following compensatory damages plus interest through the date of judgment, consequential damages, punitive damages as authorized by N.J.S.A 2A-15-5, interest, attorney's fees, costs of suit and expenses, and, such other relief as the Court deems just and equitable.

**SIXTH COUNT**
**COMMON LAW FRAUD and FRAUDULENT INDUCEMENT**

84. Plaintiff re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth at length herein.

85. In October 2018 Defendant Ankur falsely portrayed to SMP that Defendant Encore and Defendant Patel needed a loan to purchase a property.

86. Defendant Ankur knew that those representations were false. In reality, neither Defendant Encore, Defendant Ankur, nor Defendant Patel purchased a property with the loan proceeds, nor did any of them intend to.

87. Defendant Encore and its affiliate Defendant Patel knew of and acquiesced in the fraudulent misrepresentations Defendant Ankur made to SMP. Defendant Ankur realized that if SMP knew the true facts, SMP would never have agreed to loan the money to Defendant Encore or wire same to Defendant Patel.

88. Defendant Encore and Defendant Ankur misrepresented material facts, as set forth above, in or about October 2018, for the express purpose of inducing SMP to send money to Defendant Patel in reliance on those misrepresentations.

89. Defendant Patel aided and abetted the fraud that Defendant Ankur committed and substantially assisted Defendant Ankur in the achievement of the fraud by collaborating with Defendant Ankur to provide false and fraudulent information to SMP, including, but not limited to, the location of a prospective property.

90. Once SMP wired the money to Defendant Patel, all Defendants continued the fraud by depositing checks in SMP's account that were ultimately returned, causing further harm to SMP.

91. SMP justifiably relied, to its detriment, on the misrepresentations of Defendant Encore, Defendant Ankur and Defendant Patel as to the reason the loan was requested and the change in wire instructions from the initial understanding.

92. SMP sustained substantial economic damage as a result.

93. SMP would not have agreed to loan the money to Defendant Encore if SMP knew that the

real purpose of the money was to enrich Defendant Ankur and Defendant Patel individually.

94. SMP is damaged, by an amount to be determined at trial, but in no event less than $240,000.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

## CERTIFICATION REGARDING RELATED ACTIONS

The undersigned certifies that the matter in controversy is subject to a criminal action pending in the Superior Court of Middlesex County, New Jersey.

## RULE 7.1 -CORPORATE DISCLOSURE STATEMENT

SMP Properties, LLC hereby makes the following disclosures pursuant to FRCP 7.1:  SMP Properties, LLC does not have a parent corporation and no stock in SMP Properties, LLC is owned or held by a publicly held corporation.

**Dated: May 29, 2020**                          **SENTIENT LAW GROUP, PC**

By:  /s/ Jacqueline Martinez, Esq.

352 Middlesex Avenue
Colonia, New Jersey 07607
(201) 994-9070

jacqueline@sentientlawgroup.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

SMP PROPERTIES LLC,                     :
                                        :
              Plaintiff,                :        Civ. No.
                                        :
       v.                               :
                                        :        **DECLARATION OF RISHI PATEL**
ENCORE REALTY LLC,                      :
ANKUR PATEL and RAHUL PATEL             :
                                        :
              Defendants.               :
                                        :

     I, RISHI PATEL, declare, swear and affirm under penalties of perjury of the State of

New Jersey, as follows:

1. I have personal knowledge of the following facts and can testify to them.

2. I am a managing member of SMP Properties LLC. I am a licensed Real Estate Professional.

3. I have known Defendant Ankur Patel since 2008.

4. In October 2018, Defendant Ankur Patel ("Defendant Ankur"), called me and asked if SMP

   could loan $200,000 ("Principal") to Defendant Encore Realty, LLC ("Defendant

   ENCORE") for purchase of a property located at 202-204 Washington Street, New Briton,

   CT 06051 ("Property"), which was owned by his cousin Rahul Patel ("Defendant Rahul").

5. Defendant Ankur explained that he would give a 20% return on the Principal, amounting to

   $40,000. At maturity of the loan, SMP expected to receive $240,000 from Defendant

   Ankur, representing the Principal plus interest.

6. Defendant Ankur and I agreed that DEFENDANT ENCORE would repay the note due to

   SMP in 6 monthly increments of $40,000, beginning November 2018 with the final

   installment due April 2019.

7. I brought the opportunity to the other managing member of SMP, Sagar Shah, and he agreed to the deal on the basis that Defendant Ankur was a trusted friend of some of the members of SMP, and because SMP had done business with Defendant Ankur before. Most of all, SMP agreed to the deal because Defendant Ankur personally guaranteed the loan.

8. On October 9, 2018, Defendant Ankur advised that he wanted SMP to wire the Principal directly to his cousin Defendant Rahul, instead of to Defendant ENCORE's bank account. Apparently, Defendant Rahul needed to close on the Property that day, or he would lose the deal.

9. I communicated the above with Sagar Shah, who is SMP's Chief Financial Officer. Sagar, on behalf of SMP, wired $200,000 to Defendant Rahul's personal account at Western Bank in Connecticut.

10. Thereafter, Defendant Ankur informed me that Defendant Rahul had overnighted blank checks to Defendant Ankur and that he would make out the checks to SMP pursuant to the agreed upon re-payment schedule.

11. In December 2018, Defendant Ankur deposited two checks into SMP's bank account, in the amount of $40,000 each, which were supposed to be installments for November 2018 and December 2018 repayment. Both checks were returned due to insufficient funds and SMP incurred penalties in connection with same.

12. Since that time, I have made countless attempts to reach out to Defendant Ankur and Defendant Rahul to resolve this matter but neither has responded.

13. In May 2019, SMP's attorneys sent Defendant Ankur and Defendant Rahul a Demand Letter for the money owed. Neither Defendant Ankur nor Defendant Rahul contacted me in response to the Demand Letter.

14. Upon realizing that neither Defendant ENCORE, Defendant Ankur or his cousin Defendant Rahul intended to repay the loan, SMP filed a police report, with the Middlesex County Police Department, citing the bounced checks and Defendant Ankur's fraud.

15. In December 2019, a detective from the Edison Police Department called me to discuss the complaint. I provided the detective with copies of the conversation between myself and Defendant Ankur.

16. I was advised that on February 7, 2020, a bench warrant was issued for Defendant Ankur because he failed to communicate with the detective.

17. I am unaware of the current status of the criminal matter due to the Covid-19 crisis.

18. SMP, its members and myself have been damaged by Defendant Ankur's and Defendant Rahul's theft and fraud.

Rishi Patel

BEFORE ME, personally appeared RISHI PATEL, known to me to be the person described herein; who executed this document; and acknowledged that he signed the same.

SUBSCRIBED AND SWORN TO on this 28th day of May 2020.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SMP PROPERTIES LLC, | : | |
| | : | |
| Plaintiff, | : | Civ. No. |
| | : | |
| v. | : | |
| | : | **DECLARATION OF SAGAR SHAH** |
| ENCORE REALTY LLC, | : | |
| ANKUR PATEL and RAHUL PATEL | : | |
| | : | |
| Defendants. | : | |

I, SAGAR SHAH, declare, swear and affirm under penalties of perjury of the State of New Jersey, as follows:

1.  I have personal knowledge of the following facts and can testify to them.

2.  I am a managing member of SMP Properties LLC ("SMP"). In my role I am the Chief Financial Officer.

3.  I have known Defendant Ankur Patel ("Defendant Ankur") since 2016. I was his Certified Public Accountant from 2016 through 2018.

4.  I have known Rishi Patel ("Rishi") since 2006. He is a managing member of SMP.

5.  In October 2018, Rishi called me and asked if SMP could loan $200,000 to Defendant Encore Realty LLC ("Defendant ENCORE") for the purchase of a property ("Principal") located at 202-204 Washington Street, New Briton, CT 06051 (the "Property").

6.  Rishi explained that the loan would yield a 20% return, which meant that the Principal would generate $40,000 as profit. At maturation of the loan, SMP expected to receive $240,000 from Defendant Ankur, representing the Principal plus interest.

7.  Rishi explained that Defendant ENCORE would repay the note due to SMP in 6 monthly

increments of $40,000, beginning November 2018 with the final installment due April 2019.

8. Since Rishi was a trusted member of SMP, and he had previously conducted business transactions with Defendant ENCORE and Defendant Ankur, I felt comfortable with the transaction and believed it would generate returns on SMP's capital.

9. On October 9, 2018, Rishi advised that Defendant Ankur wanted SMP to wire the Principal directly to a man named Rahul Patel ("Defendant Rahul), instead of wiring the funds to Defendant ENCORE's bank account. Apparently, Defendant Rahul needed to close on the Property that day, or he would lose the deal.

10. It was always my understanding that Defendant Rahul is the cousin of Defendant Ankur, and that Defendant Rahul was the individual purchasing the Property, despite Defendant Ankur requesting the loan.

11. Accordingly, I wired $200,000 to the account information provided to me by Rishi. A copy of the wire receipt is attached.

12. In December 2018, Defendant Ankur deposited two checks into SMP's bank account, in the amount of $40,000 each, which were supposed to be installments for November 2018 and December 2018 repayment. Both checks were returned due to insufficient funds and SMP incurred penalties in connection with same.

13. After the checks bounced, I texted Defendant Ankur and told him the default needs to be resolved or that I would be forced to bring legal action against him. Defendant Ankur stated he was trying to work it out and apologized for all the strife he had caused SMP. He ceased communication with me thereafter.

14. In May 2019, SMP's attorneys sent Defendant Ankur and Defendant Rahul a Demand

Letter for the money owed. Neither Defendant Ankur nor Defendant Rahul contacted me in response to the Demand Letter.

15. Upon realizing that neither Defendant ENCORE, Defendant Ankur or his cousin Defendant Rahul intended to repay the loan, SMP filed a police report, with the Middlesex County Police Department, citing the bounced checks and Defendant Ankur's fraud.

16. In December 2019, a detective from the Edison Police Department called me to discuss the complaint. I provided the detective with copies of the conversation between myself and Defendant Ankur.

17. I was advised that on February 7, 2020, a bench warrant was issued for Defendant Ankur because he failed to communicate with the detective.

18. I am unaware of the current status of the criminal matter due to the Covid-19 crisis.

19. SMP, its members and myself have been damaged by Defendant Ankur's and Defendant Rahul's theft and fraud.

Sagar Shah

Attorney at Law    NJ ID: 129282014

BEFORE ME, personally appeared SAGAR SHAH, known to me to be the person described herein; who executed this document; and acknowledged that he signed the same.

SUBSCRIBED AND SWORN TO on this 28th day of May 2020.

**EXHIBIT 1**

Investors Bank 014A017095

12/06/2018
Page 48
000000002449900442

The enclosed deposited item (s) have
been returned unpaid and the Advice
Total shown below deducted from your
account.  Should you have questions,
please call customer service.

REASON
NSF-Not Sufficient Funds

SEQ #
0924247121

ITEM AMOUN
40000.(

12/06/2018

This is a LEGAL COPY of
your check. You can use it
the same way you would
use the orginal check.

RETURN REASON – A
NOT SUFFICIENT
FUNDS

**NSF**

**RAHUL PATEL**
117 GROUSE HILL ROAD
GLASTONBURY, CT 06033

120
51-7014/2111
92

Date

Pay to the order of     S/MP PROPERTIES LLC          |  $  40,000 00/100

FORTY    THOUSAND D                              Dollars

**Webster**Bank
WebsterOnline.com

Premier Checking

For

⑉ ⦂ 7010 ⦂⦂ 10 ⬛ 6 2 ⦂ ⦂⦂ 0 ⦂ 20



The enclosed deposited item (s) have
been returned unpaid and the Advice
Total shown below deducted from your
account. Should you have questions,
please call customer service.

REASON
NSF-Not Sufficient Funds

SEQ #
0924741691

ITEM AMOUNT
40000.00

12/05/2018

This is a LEGAL COPY of
your check. You can use it
the same way you would
use the orginal check.

RETURN REASON - A
NOT SUFFICIENT
FUNDS



NSF

RAHUL PATEL
117 GROUSE HILL ROAD
GLASTONBURY, CT 06033

119

Pay to the order of  SMP Properties LLC                      $ 40,000

FORTY THOUSAND                                               Dollars

WebsterBank
WebsterOnline.com

Premier Checking

For

# EXHIBIT 2

**investors Bank**

Address: 101 JFK Parkway
Short Hills, NJ 07078
Attn: Wire Room

Phone: 973-924-8297
Fax: 973-924-2925
Email Address: DL-WirePaymentCenter@myinvestorsbank.com

**Wire Transfer Message Reference Number:**   20182820054500

**WIRE TO:**

Bank ABA No.(ID/Type):     0101
Bank Name:                 WEBSTER BANK, N.A.
Amount:                    $ 200,000.00
Special Instructions (BBI):

**CREDIT TO:**

Name:               RAHUL PATEL
Address:

Account Number:        6211
Special Instructions

Beneficiary Bank ABA
Beneficiary Bank

**ORIGINATED BY:**

Name:        SMP PROPERTIES LLC
Address:     2100 OAK TREE RD 2
             EDISON NJ 08820-1482
             US

Account Number:        0442

**Wire Transfer Terms and Conditions**

It is hereby agreed that the acceptance of this order by Investors Bank, Short Hills, NJ hereinafter referred to as "Bank" is subject to the following terms and conditions as well as to any terms or conditions as stated in the Bank's Funds Transfer Agreement you may have previously executed; and the terms shall have the meaning set forth in Article 4A of the Uniform Commercial Code and Subpart B of Federal Reserve Regulation J. The transfer may be affected by the Bank through any one of its correspondents, and that correspondent may forward the transfer to any of its branches or correspondents, the one to which it is ultimately addressed being herein referred to as "Payer."

Notice(s) relative to the transfer may be sent in explicit language; and neither the Bank nor its correspondent shall be liable for any errors, delays or defaults not attributable to its own gross negligence in the transmission of any such message(s) or telegraph, cable, wireless, radio, telephone or any other means of transmission.

Payer may be credited at any time with the amount to be transferred (or it's equivalent) and, following such credit, Bank and it's correspondent may regard the amount so credited as being in all respects for the account of Payer, and as subject to its order and control, and Bank and its correspondent shall be at that point without liability for any (s) acts or failures to act (inclusive of any failure to identify Beneficiary) on the part of the Payer, or (b) failure of the funds to reach the beneficiary.

Wire transfer requests received by 5:00 PM EST will be wired out by Bank on the same day, with the exception of wires received on Saturday, Sunday or a Bank observed Holiday(s) or in the event my order is unclear or incomplete. I understand my copy is only a confirmation of receipt of my transfer instructions and that the wire is subject to final approval by the Bank in its sole and exclusive discretion.

I hereby authorize Bank to charge my designated above "Charge To" account for the wire transfer as stated above and any associated fee(s) as posted from time to time in the Bank's Fee Schedule or assess fees through Account Analysis for my business account(s).

Purpose of Wire:        Business loan                      (must be completed for each wire)
Customer Signature:                          Date: 10/9/18    Time: 10.48
Customer Identification:              25861      Customer Telephone Number:        279 16
                                    6/29/2019

I certify that I have validated the above Signature as an authorized signature for the "Charge To" account and funds are available in the Customer's account and submit this transfer.

Bank Personnel Signature:   Donna Williams      Date: 10/9/18      Phone: 732-98-710
Entered by:                 Donna Williams      Date: 10/6/18      Time: 10.48
Bank Personnel Signature:                       Date: 10-9-78      Phone: 732-985-
Authorized by:              Patgen Ahmed        Date: 10-9-78      Time: 10.51 am